IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MELISSA CARSON, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>THE HOME DEPOT, INC.,<br><br>    Defendant. | CIVIL ACTION FILE<br>NO. 1:21-CV-4715-TWT |

**OPINION AND ORDER**

This is a putative class action under the Telephone Consumer Protection Act. It is before the Court on the Defendant's Motion to Dismiss [Doc. 8] and the Defendant's Motion to Compel Arbitration or, in the Alternative, to Dismiss [Doc. 15]. For the reasons set forth below, the Defendant's Motion to Dismiss [Doc. 8] is DENIED as moot, and the Defendant's Motion to Compel Arbitration or, in the Alternative, to Dismiss [Doc. 15] is GRANTED in part and DENIED in part.

### I. Background

This case arises from the Defendant The Home Depot, Inc.'s alleged failure to implement procedures for honoring do-not-call requests by consumers. According to the Amended Complaint, Home Depot has "bombard[ed]" the Plaintiff Melissa Carson's cellphone with marketing text messages even after repeated requests to stop. (Am. Compl. ¶ 9.) All of the

messages were sent to the Plaintiff as part of the "Pro Referral" program. (*Id.* ¶¶ 9-15.) ProReferral.com is a free online platform that connects people working on home improvement projects with independent professionals in their area. (Plungy Decl., Ex. A-2 at 1 & ¶ 3.1.)[1] The website is owned and operated by non-party Red Beacon, Inc., which is a wholly owned subsidiary of Home Depot. (*Id.* ¶ 2.) On July 8, 2021, the Plaintiff submitted three requests on Pro Referral to find help repairing a door jamb, and she twice checked a box stating: "Get Text updates about my service request." (*Id.* ¶ 20.) The same day, Pro Referral sent the Plaintiff a text message matching her project with a construction company, to which she responded "Stop" to unsubscribe from future messages. (Am. Compl. ¶ 9.)

But the text messages did not stop there. Over the next approximately three weeks, the Plaintiff received four more messages from the same phone number, each one identifying "PROREFERRAL" as the sender and including a link to Pro Referral's website. (*Id.*) The first three communications asked the Plaintiff to write reviews or take surveys about her experience with Pro Referral; the fourth one was an inquiry from the construction company that had been matched with the Plaintiff's project weeks earlier. (*Id.*) Again, the

---

[1] In ruling on a motion to compel arbitration, the Court is allowed to consider matters outside the four corners of the complaint. *See Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1292 (S.D. Fla. 2017).

Plaintiff replied "Stop" (sometimes multiple times) to all but one of the messages. (*Id.*) According to the Amended Complaint, this series of communications, including the survey requests, were "part of an overall marketing, or profit-seeking, campaign conducted by [Home Depot] to promote its Pro Referral services." (*Id.* ¶ 15.)

To enroll her project in Pro Referral, the Plaintiff first had to accept Pro Referral's Terms of Service by clicking the "Submit My Request" button. (Plungy Decl. ¶¶ 15-16 & Ex. A-1.) The Terms of Service were available to view through a hyperlink posted above the button. (*Id.* ¶¶ 17-18 & Ex. A-1.) On the first page of the Terms of Service, the Plaintiff was informed that any claims against Pro Referral could be subject to arbitration on a strictly individual basis:

> THESE PROVISIONS MAY, AT PRO REFERRAL'S SOLE OPTION, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST PRO REFERRAL TO BINDING AND FINAL ARBITRATION ON AN INDIVIDUAL BASIS, NOT AS A REPRESENTATIVE OR CLASS MEMBER OF ANY CLASS, GROUP OR REPRESENTATIVE ACTION OR PROCEEDING.

(*Id.*, Ex. A-2 at 1.) Section 15.1 of the Terms of Service, titled "Arbitration and Waiver of Jury Trial," further states:

> You agree that Pro Referral may elect, in its sole discretion, to submit or require You to submit any dispute, complaint or demand ("Claim") relating to or concerning in any way the Agreement or use of the Website to binding arbitration within a reasonable time after the Claim arises.
>
> **IF PRO REFERRAL CHOOSES TO ARBITRATE A CLAIM . . . . YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE IN ANY**

CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION.

(*Id.*, Ex. A-2 ¶ 15.1.) As used in the Terms of Service, the name "Pro Referral" refers to Red Beacon, not Home Depot or any other entity. (*Id.*, Ex. A-2 at 1.)

The Plaintiff filed her original Complaint in Georgia state court, and Home Depot timely removed the action to this Court and filed the first Motion to Dismiss. That Motion was mooted when the Plaintiff amended her pleading to add more details about the Pro Referral communications. The Amended Complaint asserts one count against Home Depot—on behalf of the Plaintiff and a proposed nationwide class—for violation of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d). (Am. Compl. ¶¶ 39-48.) Allegedly, Home Depot has failed to (1) implement a written policy for maintaining a do-not-call list; (2) train its personnel on the existence and use of the do-not-call-list; (3) maintain a do-not-call list; and (4) honor do-not-call requests from consumers. (*Id.* ¶ 44.) The sole basis for this allegation is Home Depot's failure to honor the Plaintiff's (and the class members') requests not to receive telephone solicitations. (*Id.* ¶¶ 42-43.) Home Depot now moves to submit this case to arbitration as provided in Pro Referral's Terms of Service or, in the alternative, to dismiss it altogether for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.   Legal Standard

The Federal Arbitration Act (the "FAA" or "Act") "embodies a liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (quotation marks omitted). Section 2 of the Act provides in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]

9 U.S.C. § 2. On a motion to compel arbitration, a court undertakes a two-step inquiry to determine (1) whether the parties agreed to arbitrate the dispute in question and, if they did, (2) whether legal constraints external to their agreement forecloses arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Courts apply state contract law to questions regarding the validity, revocability, and enforceability of arbitration agreements. *See Caley*, 428 F.3d at 1368. An arbitration clause may be unenforceable for the same reasons as any other contract, such as fraud or unconscionability. *See Mitsubishi*, 473 U.S. at 627. Or there may be statutory barriers to arbitration, such as a congressional intention to adjudicate certain substantive rights solely in a judicial forum. *See id.* at 628. When an arbitration agreement clears both prongs of the FAA test, a court must either stay or dismiss the lawsuit and compel arbitration. *See Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, though, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting the plaintiff "receives the benefit of imagination" at the pleading stage). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of his claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

### III.   Discussion

The Court first considers whether this action should be submitted to arbitration under Pro Referral's Terms of Service and then, if necessary, whether the Amended Complaint states a plausible claim for relief under the TCPA.

A. Motion to Compel Arbitration

The Plaintiff raises two arguments in an attempt to save her TCPA claim from arbitration. First, she argues that Home Depot has no right to compel arbitration because she only agreed to arbitrate with non-party Red Beacon, not Home Depot. Second, she argues that her cause of action does not arise from her use of the Pro Referral website and thus falls outside the scope of the arbitration clause. Because the Court agrees that Home Depot cannot enforce the Terms of Service in this case, there is no need to address the Plaintiff's second argument in opposition to arbitration.

The Plaintiff asserts (and Home Depot does not contest) that Home Depot is not a named party to the Terms of Service. Generally, the right to enforce a contract's terms is reserved to the contracting parties. *See Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1168 (11th Cir. 2011). Georgia's doctrine of equitable estoppel provides an exception to this rule, allowing nonsignatories to invoke an arbitration clause against a signatory under limited circumstances. One circumstance occurs "when the signatory [i.e., the Plaintiff] to the contract containing the arbitration clause raises allegations of *substantially interdependent and concerted misconduct* by both the nonsignatory [i.e., Home Depot] and one or more of the signatories to the contract [i.e., Red Beacon]." *Autonation Fin. Servs. Corp. v. Arain*, 264 Ga. App. 755, 759 (2003) (emphasis added) (alterations omitted) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), *abrogated*

7

*on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)). By extending enforcement rights to these nonsignatories, equitable estoppel ensures that arbitration proceedings between the two signatories are not rendered meaningless and the federal policy in favor of arbitration is not effectively thwarted. *See MS Dealer*, 177 F.3d at 947.

According to the Plaintiff, this case does not warrant equitable estoppel because the Amended Complaint raises allegations of misconduct solely against Home Depot, not Red Beacon. Indeed, the Amended Complaint alleges that Home Depot alone was responsible for sending the communications at issue and for failing to honor the Plaintiff's opt-out requests. (Am. Compl. ¶¶ 9-10, 21-23.) But these assertions, the Court finds, are implausible on their face and contradicted by specific details in the Amended Complaint. The Plaintiff began receiving text messages only after she made three service requests (and signed up for text updates) with Pro Referral. In fact, each message excerpted in the Amended Complaint specifies "PROREFERRAL" as the sender, shares information related to Pro Referral's service, and contains a link to Pro Referral's website and privacy terms. (Am. Compl. ¶ 9.) Home Depot explains that Pro Referral is owned and operated not by Home Depot itself, but by its subsidiary Red Beacon.[2] In response, the Plaintiff asks the

---

[2] This fact is supported not only by the Plungy declaration and its exhibits, but also by Pro Referral's privacy policy which is linked in the text messages reproduced in the Amended Complaint. (Am. Compl. ¶ 9.) *See* Pro Referral Privacy Policy, https://www.proreferral.com/about/legal/privacy (last

Court to ignore these specific, undisputed facts and defer instead to her conclusory allegations that Home Depot sent the complained-of text messages. That would require the Court to suspend all disbelief, which it will not do. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations."). Rather, the only reasonable inference to be drawn from the Amended Complaint is that the alleged wrongdoing by Home Depot must have occurred through Red Beacon.

The Plaintiff cannot avoid the arbitration clause by tactically omitting the signatory, Red Beacon, from this case and then summarily attributing its acts and omissions to a nonsignatory defendant, Home Depot. This kind of pleading gamesmanship is not tolerated within the Eleventh Circuit. *See, e.g.*, *Lopez v. United Health Grp., Inc.*, 2014 WL 7404123, at *4 (M.D. Fla. Dec. 30, 2014) ("Although Plaintiffs have dropped 'United Healthcare Corp.' as a party, the Court may still compel the parties to arbitration."); *Morselife Found., Inc. v. Merrill Lynch Bank & Trust Co., FSB*, 2010 WL 2889932, at *4 (S.D. Fla. July 21, 2010) ("MorseLife cannot avoid the valid operation of equitable estoppel stemming from the substantially interdependent and allegedly

---

visited July 7, 2022) (referring to Red Beacon throughout the privacy policy as "Pro Referral," "we," or "us").

9

concerted misconduct of Merrill Lynch employees by simply amending its complaint to eliminate the alleged wrongdoers' principal, Merrill Lynch, as a party."). The Plaintiff also cites no authority to support her assertion that a nonsignatory's right to compel arbitration hinges on whether a signatory is named as a co-defendant. *See, e.g.*, *Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*, 414 F. App'x 240, 242-43 (11th Cir. 2011) (allowing a defendant parent company to enforce an arbitration clause signed by its non-party subsidiary when the claim against the parent was "both based on the same facts and [was] inherently inseparable" from the subsidiary's alleged breach of a purchase contract); *Autonation*, 264 Ga. App. at 761-62 (agreeing with the Fifth Circuit that equitable estoppel can be used to compel arbitration "even though the signatory to the arbitration agreement was not a defendant in the action").

The Court's inquiry does not end there, however, because equitable estoppel is subject to a further important limitation:

> A plaintiff's allegations of collusive behavior between the signatory and nonsignatory parties to the contract do not automatically compel a court to order arbitration of all of the plaintiff's claims against the nonsignatory defendant; rather, such allegations support an application of estoppel only when they "establish that the claims against the nonsignatory are *intimately founded in and intertwined with* the obligations imposed by the contract containing the arbitration clause."

*In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 975 (11th Cir. 2002) (emphasis added) (alterations omitted) (quoting *MS Dealer*, 177 F.3d at 948),

10

*rev'd on other grounds sub nom.*, *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003). The purpose of equitable estoppel "is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage by requiring arbitration." *Id.* at 976 (quotation marks and alterations omitted). Consequently, the *sine qua non* of equitable estoppel is whether the plaintiff *actually depends* on the underlying contract to make out his claim against the nonsignatory defendant. *See id.* If not, then the nonsignatory cannot use the contract to force the case into arbitration.

In *In re Humana*, the Eleventh Circuit relied on this principle to deny arbitration in a RICO suit brought by a group of doctors against several HMOs. In short, some of the doctors had contracts with some of the HMOs containing arbitration clauses, and the district court held that the nonsignatory HMOs could not invoke those arbitration clauses for their own benefit. *See In re Humana*, 285 F.3d at 973. Agreeing, the Eleventh Circuit reasoned that:

> [T]he doctors' suit does not rely upon or presume the existence of an underlying contract; the RICO claims in this case are based on a statutory remedy Congress has provided to any person injured as a result of illegal racketeering activities. This remedy stands apart from any available remedies for breach of contract, and clearly is not intimately founded in and intertwined with the underlying contract obligations.

*Id.* at 976 (quotation marks and citation omitted). Thus, equitable estoppel was not appropriate, the court held, since the doctors were not attempting to hold

11

the nonsignatory HMOs to the terms of a signatory HMO's contract. *See id.* It did not matter that the doctors had alleged fraudulent, collusive behavior among the HMOs: there was no suggestion that the contracts containing arbitration clauses were "the product of, or in any way related to," the HMOs' conspiratorial behavior. *Id.*

The Eleventh Circuit's reasoning in *In re Humana* applies with equal force to this case. The Plaintiff requires no assistance from Pro Referral's Terms of Service to recover on her TCPA claim against Home Depot. The Amended Complaint does not reference the Terms of Service, much less allege a breach of any obligations or request any remedies available under the contract. Instead, the Plaintiff's cause of action relies on the TCPA's independent restrictions on telemarketing activities and its private right of action to seek an injunction and damages for regulatory violations. *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(d). Because the Plaintiff is not attempting to hold Home Depot to any part of the Terms of Service, her claim is not "intimately founded in" or "intertwined with" the contract.[3] *See Becker*

---

[3] No doubt, there is a factual connection between the Plaintiff's TCPA claim and the Terms of Service. As explained above, the text messages started as a direct result of the Plaintiff signing up for Pro Referral and consenting to its Terms of Service. However, a "but-for" or "factually significant" relationship between the underlying contract and the Plaintiff's claim is not enough to constitute actual dependence on the contract. *See Bailey v. ERG Enters., LP*, 705 F.3d 1311, 1322-23 (11th Cir. 2013) ("For a plaintiff's claims to rely on the contract containing the arbitration provision, the contract must form the legal basis of those claims; it is not enough that the contract is factually significant to the plaintiff's claims or has a 'but-for' relationship with them." (citation

*v. Davis*, 491 F.3d 1292, 1300 (11th Cir. 2007), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009). Put differently, the Plaintiff "would have an independent right to recover against [Home Depot] even if the contract containing the arbitration clause were void." *Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 333 (E.D. Pa. 2004). For that reason, the Court concludes that Home Depot cannot enforce the Terms of Service's arbitration clause through equitable estoppel.

### B. Motion to Dismiss

At the same time, the Plaintiff's own allegations doom her TCPA claim under Rule 12(b)(6). As explained above, the Amended Complaint does not plausibly allege that Home Depot sent any text messages to the Plaintiff. Instead, the communications expressly came from Pro Referral, which is owned and operated by Home Depot's subsidiary Red Beacon. Direct liability thus does not attach to Home Depot under the TCPA. *See* 47 C.F.R. § 64.1200(d) ("No person or entity *shall initiate* any call for telemarketing purposes . . . ." (emphasis added)); *Cabrera v. Gov't Emps. Ins. Co.*, 452 F. Supp. 3d 1305, 1316 (S.D. Fla. 2014) ("The Court agrees with GEICO that because GEICO did not make or initiate any of the calls at issue in this action, there can be no direct liability against GEICO under the TCPA."). And neither the Amended

---

omitted)); *see also Lawson*, 648 F.3d at 1174 ("[A] 'but-for' relationship . . . . alone is not enough to warrant equitable estoppel.").

Complaint nor the Plaintiff's brief put forth an alternate theory of liability as to Home Depot—for example, vicarious liability based on Red Beacon's perceived lack of do-not-call procedures. Consequently, the sole count in the Amended Complaint does not state a viable claim for relief and should be dismissed with prejudice.

## IV.   Conclusion

For the foregoing reasons, the Defendant's Motion to Dismiss [Doc. 8] is DENIED as moot, and the Defendant's Motion to Compel Arbitration or, in the Alternative, to Dismiss [Doc. 15] is GRANTED in part and DENIED in part. The Amended Complaint is DISMISSED with prejudice, and the Clerk of Court is DIRECTED to close this case.

SO ORDERED, this   26th   day of July, 2022.

THOMAS W. THRASH, JR.
United States District Judge